Good morning, Your Honors. May it please the Court, I'm Deborah Barnes, Deputy Attorney General, representing the petitioner, the State Water Project in this matter. I'll be sharing my time this morning with my colleague, Mike Postar, who is representing the petitioners, the State Water contractors. I would also like to reserve a couple of minutes for rebuttal. I will be addressing the FERC's improper imposition of the burden of proof on the petitioners in this case, as well as the lack of reasoned decision-making by FERC in deviating from their long-standing policy and prior decisions supporting time-of-use pricing. My colleague, Mr. Postar, will be addressing FERC's deviation from its transmission pricing policy and the improper use of congestion management to send price signals for transmission purposes. To get right to the main point we think in this case is the burden of proof issue. FERC erred, abused its discretion, did not follow the law in finding and did not engage in reasoned decision-making in finding that the petitioners in this case had the burden of proof. Amendment 27, which set the flat rate, ISO grid-wide ISO grid-wide rate in this case was a new rate. It was a departure from the status quo. That does plenty of evidence in the record, both in the orders from FERC and in the actual filing itself from the ISO, that that was a new rate. It's almost as if FERC got off to the wrong foot in the initial decision. In the initial decision, the the administrative law judge talks about the strong evidence that was presented by both the State Water contractors and the State Water project supporting the time-of-use methodology and the the benefits of it and the importance of it, and as well as in the briefing before the administrative law judge, the policies behind that, that briefing. And the administrative law judge recognizes that, but almost implies that because of the burden of proof being on the petitioners in this case under Section 206 of the Federal Power Act, it wasn't enough. However, had the and after that initial decision, it's as if the FERC, the commission itself, just followed that wrong placement of the burden of proof all the way throughout the process, and to this day is still arguing that the burden of proof should have been on the petitioners. As a new ---- Kennedy. The burden of proof is based on what FERC had approved. If it changes its basis of charging, then the burden of proof shifts. But it had already approved congestion pricing, hadn't it? Not in this case, Your Honor. In our ---- in this case, what FERC ---- there had been no approval of this. Because it was an interim approval? That's correct, Your Honor. You're hanging your hat on ---- pardon me here ---- on the word interim? That's one of the factors that we've looked at. However, the FERC itself did not, quote, hang its hat on that interim. Right. It was ---- that was an argument that was put forth by the attorneys for FERC and for the ISO after the administrative process was over. The interim rate the Court's referring to, I believe, was in the October 30th order that did provide an interim rate. But even that interim rate was still different from the rate that was put forward in Amendment 27. It was a progression. Initially, prior to Amendment 27, and as this is during the time frame when the ISO was getting started, we're transitioning  Prior to this, in the main three areas by the California Utilities, San Diego Gas and Electric, Southern California Edison, and Pacific Gas and Electric, there were different rates in each of those zones. The interim order provided a flat rate in each of those zones, but it changed the mechanism by which those rates were charged. But you still had three different zones with three different rates, but there was still a change from the prior rate structure. What Amendment 27 did in a very simply stated fashion is it created for the first time in California one rate in all three of those utility zones that imposed the same flat rate in all of those zones. Kennedy. But you're not complaining about the flat rate, are you? Yes, we are. You're complaining about the congestion rate. No, that's not it. Are you complaining about the interplay of the two? Well, actually, we're complaining about the flat rate. It is our position that the flat rate, the usage of the flat rate in the ISO grid-wide zone is not just unreasonable. FERC did not care, the ISO as a regulated utility did not care of its burden in that regard. How the congestion rate plays in, and my colleague can speak to this in further detail if the Court desires, is that FERC erroneously used congestion pricing as a price signal for transmission purposes. It's an inappropriate use of congestion pricing for sending a price signal for transmission purposes. They're two different things. Congestion pricing is short-term, and the transmission pricing is a long-term price signal. And by using a flat rate, FERC deviated from its past policies, its past decisions without reasoned decision-making, without explanation as to why all of a sudden here in California for this ISO grid-wide rate, that time-of-use rate is not appropriate. So back to the... An agency is not required to stick with its earlier interpretation. I mean, this is what we have from the state of agencies, and they can adjust in light of changed circumstances or changed policies, and there was certainly a significant amount of reason to change in California. The system wasn't working. And why isn't that reason enough for the agency to take a different approach? The Court, Your Honor, you're absolutely accurate. An agency, both on the state and Federal level, can change, and that's why we have them. However, in this case, the change that by FERC not adopting, by not keeping the burden of proof on the regulated utilities and going to the flat rate for this ISO-wide grid rate, they didn't use reasoned analysis to explain why they're deviating from this past policy and practices. The two answers that they gave, we've already discussed one, which is the reliance by FERC on this flawed congestion pricing system to send transmission price signals. But they also basically said that there's only two entities in California that would benefit from a time-of-use on-peak, off-peak pricing system, and that would be the State Water Project and the State Water Contractors. Now, there's a number of issues, a number of problems with that reason as well as with the congestion pricing issue. First of all, FERC has no idea, and there's certainly not much in the record, as to how other entities may or may not react to different price signals. We've all seen here in California with the huge insurgence of gas prices, Californians are maybe finally starting to get out of their cars. They're using alternate modes of transportation because of the high gas prices. That's a response to a price point. Here, FERC doesn't say why other entities wouldn't benefit from it, why were the only two entities that would. There's just no reasoned analysis as to why that would occur. FERC also doesn't explain why there's this deviation from its past policies and prior decisions. They don't look at, for example, the money issue. Kennedy, you want them to say more, but why are they wrong? They're wrong because they're wrong in two ways. They were wrong, procedurally wrong, because they placed the wrong burden of proof. And it is our position that if the burden of proof had been placed on the regulated entity to prove that it was just and reasonable, that we very likely would have been successful. Instead, FERC placed the burden of proof on us, saying that we had to prove that it was unjust and unreasonable. That is where they were point blank wrong. This was not a new rate filing under Section 205 of the Federal Power Act. And while an agency has discretion, it does not have the discretion to not obey a law. Secondly, in terms of reasoned assume that we find that it is not a new rate, assume that. Who has the burden? If it's not a new rate, then it's under Section, generally speaking, under Section 206 of the Federal Power Act, it would be, it could be FERC or it could be an entity that's challenging the not a new rate. It also would have to be an approved rate. There are some nuances to that, Your Honor. Why is this a new rate? This is a new rate. Aren't we talking about something that goes back to, what, 97? No, Your Honor, it's not. Why not? Because under Amendment 27, which was filed, I believe, in 2000 by the ISO, was in response to a number of factors. It was the first filing that stated that you have this ISO-wide grid rate that was the flat rate for transmission purposes. The ISO said it was a new rate. They said in the filing, in the cover letter to the clerk at FERC, they said it was a new rate. They stated that it represented that, and this is detailed in our briefs, that it was – it represented a new direction by their board. They were also directed to file a new rate under California law. AB 1890 directed them to file a new rate to pull this consolidated sort of, albeit even socialized system, of having one rate in these three different zones as another factor. Additionally, there is nowhere in the record that any party can point to where FERC has actually affirmatively approved or not affirmatively approved the rate structure that was proposed in Amendment 27. When you look at all those factors, again, I – we go back, it's almost as if FERC got off on the wrong foot with that initial decision by placing the burden of proof on the wrong party. Thank you for answering my question. Thank you. Thank you. Time is up. We'll hear from outside. Thank you. I think we gave them 10 minutes instead of 20 minutes. They still got 10. No, I think our total is 10. But – Oh, it's 10 minutes. Oh, I'm sorry. Because I have 20 minutes here. May I have my colleague have just a couple of moments? That's 20 minutes. No, no, it's 10. They're splitting it. Yeah, they just split it. Well, we'll give you a couple minutes for your colleague, but – Thank you, Your Honor. We've got 10 minutes. You got to watch your time. Thank you, Your Honor. I'll be brief. Michael Postar on behalf of the State Water Contractors and Metropolitan Water District. Yes? The agency did not purport to deviate from its policies, but it did. In 1994, it adopted a transmission pricing policy that among other things said there should be short-term transmission price signals, and this order approves rates that does not provide long-term transmission price signals. The transmission access charge is a flat charge. There's no difference. At 2 o'clock in the morning and at 2 o'clock in the afternoon, the rate is exactly the same. The commission points to congestion. That makes it sound so horrible. What's wrong with that? What's wrong with that is that the way costs are incurred on the system are tied to meeting demand, meeting peak demand. That's how the ISO explains in its papers that it plans the system. That's how Southern California Edison explained in the record that expansion generally occurs on the system. That's how the ISO's chief witness in this case, its chief policy witness, explained that they could only identify two projects, one of which was never built, that was built on any basis other than on peak. The ISO's witness, their consultant, testifies that there are a lot of people It sounds to me like you're just re-arguing what you argued before the agency and you lost. I don't, you know, these are perfectly fine arguments of the agency that adopted it, but what the commission does with, in order to meet its policy of saying we have proper price signals is they point to this congestion pricing. Congestion pricing was rejected by the commission. The commission found that it was flawed, that it created artificial congestion, that it was so fundamentally flawed they ordered it to be changed before this case was ever filed. Yet the way the commission in this order justifies meeting its transmission pricing requirements of having proper price signals is they point to the rejected methodology. They say congestion provides the signals, but they've already rejected the congestion. They ordered the ISO to replace the methodology. It's circular. There's no basis, there's no, their reasoning simply doesn't hold. And even if it did, Your Honor, the pricing policy requires long-term price signals. Congestion is a transitory and intermittent schedule. It's here this hour, it's gone the next. The pricing policy that the commission follows and that it purports to follow here is that there needs to be a long-term price signal. And congestion does not provide a long-term price signal. So the two, the two legs. But FEC, FERC, believes that it does, right? No, FERC doesn't say it provides a long-term price signal. There's no place in the record, there's no place in the order that says this is a long-term price signal. They point to congestion and says it provides proper price signals. There's no citation. There's no evidence. The evidence that they point to is ISO testimony that says this congestion on peak and this congestion off peak. It never says the grid has expanded to meet congestion or that congestion provides long-term price signals. In fact, when I asked the witness, the ISO's witness, does this provide long-term price signals, I didn't look at that. Does congestion create the basis for expansion? He didn't look at that. The record's clear on that. Thank you. Thank you. Thank you, Your Honor. Good morning. Please, the Court. I'm Samuel Sober from FERC. Mr. Ward for the ISO and the other interviewees was asked for two minutes. You better talk in front of me. Don't make the same mistake the opposing counsel did. I will not. Well, first of all, the commission properly applied the burden here. Under the Federal Power Act, you have to look at whether an element in a particular rate was changed. The case law on this is clear, and it's cited in the commission's rehearing order. If a particular element is being changed, then the burden shifts. But if the underlying rate is not being changed, those parts of the rate, the burden does not shift. So the burden here did not shift. The commission got the burden approved absolutely right. There's no such thing as an interim rate under the Federal Power Act once we have the rate that was approved and went into effect in 1998. Go back to the shifting burden. So your position is that FERC always placed the burden on properly? We've certainly placed the burden properly. My position is that under the commission's position is that under the statute, the burden only shifts when the utility comes in and changes the rate. Once you have a rate on file, the utility comes in and changes other aspects. The burden doesn't shift on that. And there is a substantial case law on that, especially in the D.C. Circuit. And what happened here? That's what happened here. We had a flat transmission access charge combined with a congestion charge, a two-part rate. The transmission access charge is now being challenged. In 2000, the ISO came with a new filing which changed a number of things about the ISO's rate. It was changing it from a three-area rate into a blended rate. But it did not change the flat transmission access charge nor the combination with the congestion charge. That point was not changed, and therefore, the burden was on those trying to change it. And those are the ones that are relevant now? Yes. Those are the only issues before the Court. There were many other issues before the commission, but none of those survived or were brought to the Court's attention. The only thing left is this one issue. So the commission applied the burden correctly. There's no interim rate. You have a filed rate, and that's the rate on file. You need predictability. That was the rate that was paid between 1998 and when the new rate went into effect. And in fact, it's still being paid in terms of the flat rate and the congestion charge. Now, the commission properly found that the transmission access charge and the congestion charge were reasonable based on the evidence. First of all, I was kind of amazed to hear that the petitioners say that the commission didn't address the question on page 488 of the supplemental excerpt of record, which is the commission's order. It specifically goes through why the transmission policy pricing statement is met by this combination of a flat transmission access charge and a congestion pricing. And it says, you know, we've accepted this before as just and reasonable. And then it goes on to discuss the evidence that was presented by the ISO about why it's reasonable for the ISO system. That being the case, the agency did its job. There is substantial evidence in the record. It's a reasonable reading of the evidence presented. That's all that is required for the agency to prevail on this being a just and reasonable rate and to prevail against the challengers. I guess one more thing I want to say. We talked about cost causation and price signals. Well, the commission found that, indeed, the congestion pricing did send the right price signals. The whole idea that the congestion pricing is flawed is a red herring. The congestion pricing that we're talking about here is interzonal congestion pricing. That's most congestion pricing in the California system. Only intrazonal, intrazonal congestion pricing was found flawed. That's 10 percent. And what the commission said here was that we have a flat rate. That looks okay. And the extent there are improvements being made in the interzonal congestion pricing, that's referred to in the order. That's fine. We'll deal with that there in that proceeding. And Petitioners are participating in that proceeding. If they have a problem with the way the congestion pricing ends up being structured as it gets improved to send better price signals, they can appeal that. Finally, the whole point of rate design is simply to make sure the most valuable transmission gets priced at a premium. That's what time of use rates do. And we have no argument with the economics of that. But, in fact, the congestion pricing that has been in place based on the ISS proposal does exactly that. There is evidence in the record that the congestion, the congested transmission is at a premium. And under congestion pricing, it gets priced the highest. So it is a kind of time of use rate. And the idea that there's some precedent that says that the commission can't    And it was a significant time of use rate. And there was evidence that the highest degree of congestion, Mr. Fiefenberg testified, occurred on off-peak hours. He said it was the same. There was substantial congestion on-peak and off-peak. He said it wasn't particularly related to the peak load because of the nature of the system. And the commission specifically relied on Mr. Fiefenberg's testimony. And didn't rely on Mr. Wilson's testimony. It found Mr. Fiefenberg's testimony convincing. And, of course, under the Federal Power Act, as long as the rates shown to be just and reasonable, it doesn't matter if there are other reasonable rates that could be put into effect. That's not the test. Is there no further questions? No further questions. Good morning, Your Honors. Michael Ward on behalf of the California Independent System Operator Corporation. May it please the Court. I primarily ask to have time in case the Court had questions about the ISO tariff or about the proceedings below. In the absence of those questions, I'd just like to make a number of very quick points. First, petitioners have talked to you about the commission deviating from its previous policies and decisions. They have not cited a single precedent in which the commission has required a transmission provider that was proposing volumetric rates to use time-of-use rates. Second, petitioners have continued to confuse the nature of the ISO rate. The ISO does have a time-of-use rate. It is a time-of-use rate that is based on the use of the transmission system, not on energy demand. The ISO's transmission rate is a two-part rate. The congestion rate, or usage charges for interzonal congestion, and the flat access charge. The only thing the ISO proposed to change in Amendment 27 was the flat access charge. It did not propose to change the rate design or the interzonal congestion or usage charges. If you were to look at the decisions approving the original ISO rate structure, the only thing the commission addressed was usage charges, interzonal congestion charges. That is where it found price signals. It did not speak to interzonal congestion charges. And as counsel has noted, the commission has only found the interzonal congestion management system flawed, not the interzonal congestion system flawed. So this whole discussion of interzonal congestion systems is largely irrelevant. I think I'm probably out of my time at this point. Thank you, Your Honor. Roberts. Thank you. We'll give you a minute. Thank you, Your Honor. The commission recognized that the only way it could approve the transmission access charge was that there had to be price signals. The TAC itself, the transmission access charge, provides no price signals. It looks to congestion. It rejected the congestion charge. Why doesn't congestion provide price signals? For two. It doesn't provide proper price signals for two reasons, Your Honor. Proper. One is, is that before this case was ever filed in 2000, the commission had already rejected the congestion management system as providing improper price signals. It ordered the ISO, which undertook an eight-year process, to try to come up with new price signals that have never been put in place. The second. Does that have to do with intrazone price congestion? Which counsel raises as a red herring. The commission doesn't address that at all. Congestion pricing is made up of two components. An intrazonal is one of those components. And our position is, is that since the commission has rejected the intrazonal congestion, which makes up part of it. It should reject intrazonal. It can't tell. The whole thing is infected. The whole pricing is infected. So relying upon congestion, which it has already rejected, is improper. And there is no red herring. The commission doesn't address that issue. One last quick point, if I could, Your Honor, on the going back to the burden of proof. There never was, in California, a single rate that you could pay to go anywhere on the ISO grid where you would pay the same charge before this filing. It didn't exist. The prior charges were flat rates. But there were three flat rates. PG&E had one. San Diego had one. And Southern California and San Diego Gas and Electric had one. There were three separate rates. They happened to be flat. But there were three completely different rates. This is the first time that there is a single high voltage rate where you can go for the same charge anywhere on the system. It also happens to be flat. But to equate three separate charges with one charge and say, oh, it's the same thing because it's flat, is a complete, we think, misreading of the facts. And that's why the commission went wrong in assigning the burden of proof to us. Thank you for your time, Your Honor. Thank you, sir. Thank you.
judges: Kozinski, Aldisert, Bea